UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:14-CV-00090-GNS-HBB


ASHLEY WRIGHT                                                    PLAINTIFF


V.


ROBERT BEARD                                                    DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendant Robert Beard ("Beard") (DN 18).  The motion has been fully briefed by the parties.  For the reasons outlined below, the motion is **GRANTED**.

## I.  SUMMARY OF FACTS AND CLAIMS

This action arises out of the death of one person and the injury to two others—including Plaintiff Ashley Wright ("Wright")—in an apparent murder/suicide.  Wright and her mother lived together in Green County, Kentucky, behind the home of Barry Moore ("Barry") and Pamela Moore ("Pamela").  (2d Am. Compl. ¶ 5, DN 16).  Although the Moores had been divorced for approximately 20 years, they still lived together.  (2d Am. Compl. ¶ 6).

Plaintiff alleges that law enforcement had been to the Moores' residence on various occasions due to reports of domestic violence prior to the murder/suicide.  (2d Am. Compl. ¶¶ 7-9).  On or about May 22, 2013, law enforcement responded to a complaint of domestic violence at the Moore residence perpetrated by Barry upon Pamela.  (2d Am. Compl. ¶ 12).  Beard responded to the latest report and interviewed Plaintiff and her mother about what they had

1

observed.  (2d Am. Compl. ¶ 12).  Wright alleges that she shared with Beard specific instances in which Wright had observed domestic violence.  (2d Am. Compl. ¶ 12).  Wright alleges that Beard then interviewed Barry and "advised Mr. Moore what [Wright] had told him and that he should watch out for [Wright] because she had a lot to say . . . ."  (2d Am. Compl. ¶ 13).

Following the incident on May 22, 2013, Pamela decided to seek legal advice and even contemplated going directly to the police to have Barry removed from the residence.  (2d Am. Compl. ¶ 14).  On July 12, 2013, Barry shot and killed Pamela in their residence after learning of Pamela's intention.  (2d Am. Compl. ¶ 14).  Before committing suicide, Barry walked over to the Wright's residence and shot both her and her mother.  (2d Am. Compl. ¶ 15).  Wright was shot in the head but survived.  (2d Am. Compl. ¶ 16).

Plaintiff filed this action alleging a violation of her civil rights under 42 U.S.C. §§ 1983 and 1988 and asserted claims against Beard in both his individual and official capacities.[1] (Compl. ¶¶ 20-14).  Wright also asserted a claim of negligence against Beard.  (Compl. ¶¶ 25-29).

Beard moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Def.'s Mot. to Dismiss, DN 6).  While the motion was pending, Wright filed her Amended Complaint alleging an additional cause of action under KRS 446.070 for official misconduct in violation of KRS 522.020-.030.  (Am. Compl. ¶¶ 30-32, DN 9).  Beard then moved to dismiss the claims asserted in the Amended Complaint.  (Def.'s Mot. to Dismiss, DN 11).

In ruling on the prior motions to dismiss, this Court dismissed the official capacity claims against Beard under 42 U.S.C. § 1983 and state law.  (Order 3-4, DN 14).  With respect to the official misconduct/negligence per se claim asserted in the Amended Complaint, the Court

---

[1] The Section 1983 claim against Beard in his individual capacity has not been dismissed and is not the subject of the present motion.

concluded that the allegations were too vague for the Court to rule on the motion, and the Court ordered Wright to file a more definite statement.  (Order 4-6).

In accordance with the Court's directive, Wright filed a Second Amended Complaint in which she alleged:

> 31.    It is a known fact within law enforcement professions that once the names of witnesses or informants the accused criminals will often retaliate.
>
> 32.    It is a clear and certain rule within the law enforcement professions that the names of witnesses or informants should not be disclosed to the accused criminals because retaliation against the witnesses or informants is a foreseeable risk.
>
> 33.    This rule flows from common law duties and professional customs and practices so well established that conduct in compliance with the rule is mandated.
>
> 34.    By informing Mr. Moore of Plaintiff's prior reports, Defendant knowingly and recklessly violated the aforementioned clear and certain rule relating to his office which constitutes Official misconduct in the second degree, in violation of KRS 522.030.
>
> 35.    As a direct and proximate result of the Defendant's violation of these statutory provisions, Plaintiff has been damaged.
>
> Plaintiff is entitled to recover for these damages pursuant to KRS 446.070 and Kentucky common law.

(2d Am. Compl. ¶¶ 31-35 (internal footnote omitted)).   Beard then renewed his motion to dismiss.  (Def.'s Mot. to Dismiss, DN 18).

## II.  JURISDICTION

The Court has jurisdiction over this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  The Court also has supplemental jurisdiction over Wright's pendent state-law claims.  *See* 28 U.S.C. § 1367.

## III.  DISCUSSION

This motion exclusively focuses on the sufficiency of Wright's allegations in Count III of the Second Complaint as quoted above.  In that count, she purports to assert a negligence per se claim under KRS 446.070 for a violation of KRS 522.030.

3

Under Kentucky law, a claim of "negligence per se is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 927 (Ky. 1994), *overruled on other grounds by Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011) (citation omitted) (internal quotation marks omitted).  As the Kentucky Supreme Court has explained:

> KRS 446.070 merely codifies the common law concept of negligence per se.  It applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect. It follows that if the defendant was not in the class of persons whose conduct was intended to be regulated by the statute, the defendant could not violate the statute and KRS 446.070 simply would not apply.

*Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000) (internal citation omitted).

### A.      Wright failed to state a claim of official misconduct under KRS 522.030 and a claim under KRS 446.070.

In this Court's prior ruling, the central issue was whether Wright had articulated a violation of a standard of care recognized under Kentucky law.   In her Second Amended Complaint, Wright clarified that she was alleging a claim of official misconduct under KRS 522.030 premised upon "a clear and certain rule within the law enforcement professions that the names of witnesses or informants should not be disclosed to the accused criminals because retaliation against the witnesses or informants is a foreseeable risk."  (2d Am. Compl. ¶ 32).  As part of her allegations in support of that claim, Wright also cited the Kentucky Supreme Court's decision in *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014).  (2d Am. Comp. ¶ 33 n.1).

In relevant part, KRS 522.030(1) provides:

A public servant is guilty of official misconduct in the second degree when he knowingly:
> (a)      Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or

(b)    Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or

(c)    Violates any statute or lawfully adopted rule or regulation relating to his office.

KRS 522.030(1).  Based upon the allegations in the Second Amended Complaint, however, the Court concludes that Wright has failed to plead a cause of action under KRS 522.030.  From the allegations asserted, it appears that Wright is alleging that Beard knowingly "[v]iolate[d] a[] statute or lawfully adopted rule or regulation relating to this office."  KRS 522.030(1)(c).  Specifically, Wright alleges that Beard violated the "clear and certain rule within law enforcement professions that the names of witnesses or informants should not be disclosed to the accused criminals because retaliation against the witnesses or informants is a foreseeable risk." (2d Am. Compl ¶¶ 32, 34).

Both the Second Amended Complaint and the response to the present motion lack a citation to any lawfully adopted rule, regulation, or statute as the "clear and certain rule" that imposes any such duty.  Instead, Wright relies upon her general and conclusory allegations that there is a professional custom.  This does not suffice.  In the absence of a citation to an applicable rule or regulation applying to Wright's interaction with Beard, it appears that no such standard has been adopted.

In her response, Wright relies upon the Kentucky Supreme Court's holding in *Gaither v. Justice & Public Safety Cabinet*.  In *Gaither*, the KSP recruited a seventeen-year-old boy named Lebron Gaither ("Gaither") to work as a confidential informant in exchange for a reduced punishment arising from an assault charge and compensation for his assistance. *See Gaither*, 447 S.W.3d at 630.  Upon turning eighteen, a KSP detective used Gaither to assist with its investigation of illegal drug trafficking. *See id.*  While wearing a hidden recording device, Gaither would purchase illegal drugs from individuals being targeted by the KSP. *See id.*  When

5

Gaither would testify before a grand jury relating to those purchases, the KSP made no effort to conceal his identity.  *See id.*  After Gaither's identity has been compromised, the KSP used Gaither in a drug buy/bust that went bad and led ultimately to Gaither's torture and death.  *See id.* at 631.

Gaither's estate pursued a wrongful death claim against the KSP in the Kentucky Board of Claims.  *See id.* at 632.  The Board of Claims ruled in the estate's favor on its claims against the KSP on the basis that the KSP officers negligently performed ministerial acts relating to the use of Gaither as a confidential informant whose identity was compromised.  *See id.*  On appeal, the Kentucky Supreme Court affirmed the judgment in favor of Gaither's estate on the issue of liability.  The Kentucky Supreme Court held that its two-prong "special relationship test" articulated in *Fryman v. Harrison*, 896 S.W.2d 908 (Ky. 1995), created a duty based upon the unique circumstances of that case—"the relationship between a confidential informant and his police supervisors during an ongoing undercover operation."  *Id.* at 637.

*Gaither*, however, did not turn on whether the plaintiff had a cause of action under KRS 446.070 for a violation of KRS 522.020 or KRS 522.030.  Instead, the issue was whether a police officer owed a duty to a confidential informant whose identity had been compromised and was intentionally put in danger.  *See Gaither*, 447 S.W.3d. at 637.  Thus, the *Gaither* decision provides no support to Wright's claims because the result in *Gaither* was not based upon KRS 446.070 and because there is no allegation that Wright was ever a confidential informant working for any law enforcement agency.

For these reasons, Wright has failed to state a claim of official misconduct under KRS 522.030 to support her claim under KRS 446.070.  The Court will dismiss the negligence per se claim.

**B.**     **Plaintiff failed to state a duty that Beard owed to Wright.**

Wright's reliance upon *Gaither* undermines her opposition to the motion to dismiss.[2]  In

choosing to deviate from the two-part special relationship test articulated in *Fryman v. Harrison*,

896 S.W.2d 908 (Ky. 1995), the Kentucky Supreme Court stated in *Gaither*:

> *Collins v. Hudson* 48 S.W.3d 1 (Ky. 2001) is our only case involving
> claims arising from the murder of a confidential informant.  In *Collins*, a
> confidential informant was killed several months after the inadvertent disclosure
> of his identity.  He was murdered by an individual against whom the informant
> was expected to testify, but at the time of his killing, the informant was not
> subject to the supervision and control of the police.  In *Collins* we expressly
> declined to reevaluate the two-pronged, "special relationship" test of *Ashby* and
> *Fryman*, noting that "inasmuch as [the claimant] has shown no compelling reason
> to depart from the authorities relied upon, we decline to reconsider these prior
> decisions."  *Id.* at 6.
> The Estate of Lebron Gaither, however, has provided a compelling reason
> for us to consider how the two-prongs of the special relationship test fit *into the*
> *context of the relationship between a confidential informant and his police*
> *supervisors during an ongoing undercover operation*.  Upon that consideration,
> and for the reasons expressed below, we conclude that although the unique police-
> informant relationship presented by this case falls outside the strictures of the
> *Fryman-Ashby* test, it nonetheless created a duty owed by the police to their
> informant.  Upon that basis, we affirm the decision of the Board of Claims that
> the KSP owed a duty to Gaither.

*Gaither*, 447 S.W.3d at 637 (emphasis added).  Thus, the Kentucky Supreme Court addressed the

issue of duty—not standard of care.  That court was also careful to couch its holding in the

context of the unique circumstances of that case—a confidential informant whose identity had

been compromised and who was intentionally put in danger.  As discussed above, absent

allegations that Wright was employed as a confidential informant, *Gaither* does not apply to the

present case.

Because the holding in *Gaither* is not applicable in the present case, the duty of police

officers to individual citizens under Kentucky law is as follows:

---

[2] In its prior ruling, this Court did not expressly rule on whether Beard owed a duty to Wright
based upon the circumstances in this case.

> The obligation of a police officer in regard to individual citizens is not founded on foreseeability alone but rather upon the existence of a special relationship to the person likely to be injured. Two conditions are required. 1) The victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor.

*Pile v. City of Brandenburg*, 215 S.W.3d 36, 40 (Ky. 2006). Wright has not alleged that she was in state custody or otherwise restrained. Likewise, she has not alleged that the violence or offensive conduct was committed by a state actor. For these reasons, Wright has failed to allege a duty that Beard owed to her, and this claim should also be dismissed on this basis.

## IV.  CONCLUSION

For the reasons outlined above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (DN 18) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court

April 14, 2015

cc:      counsel of record

8