UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO: 1:14-CV-00090-GNS-HBB

ASHLEY WRIGHT                                                                  PLAINTIFF

v.

ROBERT BEARD                                                DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Plaintiff's Motion in Limine (DN 42), which is ripe for adjudication. For the reasons stated below, the motion is **DENIED**.

### I.     STATEMENT OF FACTS

This case arises out of the tragic death of Pamela Moore ("Pamela") and the events surrounding it. Barry Moore ("Barry") and Pamela lived in Green County, Kentucky. (2d Am. Compl. ¶ 5, DN 16). Plaintiff Ashley Wright ("Wright") lived behind them with her grandmother, Barbara Wright. (2d Am. Compl. ¶ 5). On May 22, 2013, Defendant Green County Sheriff Robert Beard ("Beard") and a Kentucky State Police ("KSP") officer went to the Moores' home in response to a 911 call reporting domestic abuse perpetrated by Barry on Pamela. (Wright Dep. 55:10-14, Feb. 24, 2016, DN 42-2). After speaking initially with Pamela and Barry, Beard and the KSP officer spoke to Wright at her grandmother's house. (Wright Dep. 55:10-13, 57:3-25, 62:16-24). Wright told Beard and the KSP officer about disputes between Barry and Pamela, which involved Barry threatening Pamela, firing a gun in the home, and throwing knives and bricks at Pamela. (Wright Dep. 57:3-25, 58:1-3). Plaintiff cannot recall what, if anything, Beard said in response to this information. (Wright Dep. 58:4-59:1).

1

After speaking with Wright, Beard and the KSP officer proceeded to talk again with Pamela and Barry. In her deposition, Plaintiff described that event as follows:

> Q: Okay. Let's talk about that. So who was in front of the front porch?
> A: The law enforcement and Pam and Barry as I recall.
> Q: Okay. Pam and Barry, Sherriff Beard and the KSP trooper were in your front yard basically.
> A: My grandma's, yeah.
> Q: Okay. And could you hear their conversation?
> A: No.
> Q: All right. Could you see them talking?
> A: I could see them for like the first little bit, and then I just went about my business.
> . . .
> Q: Okay. Were they animated or angry conversations or pretty normal?
> A: Barry was always fairly animated. And from Pam just statue.

(Wright Dep. 62:1-63:14).

The statements addressed in Wright's motion stem from a conversation between her and Pamela a day or two later, in which Pamela recounted to Wright statements allegedly made by Beard on May 22. (Pl.'s Mot. Lim. & Mem. Supp. 2-3, DN 42 [hereinafter Pl.'s Mot.]). Wright testified that during their conversation, Pamela, who "[w]as really shaky" and scared, told Wright, "'I was afraid [Barry] was going to hurt you then,' because [Beard] told [Barry] . . . '[y]ou better watch out for [Wright]. She had a lot to say about you.'" (Wright Dep. 63:23-64:20). Wright further testified that Pamela repeated Beard's alleged statements again to her a few days after their initial conversation. (Wright Dep. 64:24-65:17). Wright never personally witnessed or overheard any conversations between Beard and Barry, and Barry never mentioned Beard's alleged statements to Wright. (Wright Dep. 65:18-21, 66:2-7).

Roughly six weeks later, on July 12, 2013, Barry fatally shot Pamela. (Wright Dep. 83:14-22; 2d Am. Compl. ¶ 15). Barry then entered the Wright house, shot Wright and her grandmother, and then killed himself. (Wright Dep. 84:23-87:1).

2

The Court previously dismissed Wright's claims against Beard in his official capacity under 42 U.S.C. § 1983 and state law. (Order 3-4, DN 14). It also dismissed Wright's claim against Beard for negligence *per se* under KRS 446.070 based on an alleged violation of KRS 522.030. (Order 8, DN 24). Wright's claim against Beard in his individual capacity for negligence is the sole remaining cause of action.

## II. JURISDICTION

The Court had federal-question jurisdiction over Wright's civil rights claims against Beard under 42 U.S.C. §§ 1983 and 1988. 28 U.S.C. § 1331. Those claims have been dismissed, but the Court retains supplemental jurisdiction over Plaintiffs' remaining state-law claim. *See* 28 U.S.C. § 1367.

## III. DISCUSSION

Wright's motion asks the Court to rule *in limine* that Pamela's statements to her are admissible. The first question is whether Pamela's statements are hearsay, which is generally inadmissible. Fed. R. Evid. 802. Of course, hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "[T]he hearsay rule bans in-court repetition of extrajudicial utterances only when they are offered to prove the truth or falsity of their contents." *United States v. Gibson*, 675 F.2d 825, 834 (6th Cir. 1982) (citing *United States v. Miriani*, 422 F.2d 150, 153 (6th Cir. 1970)). The rule does not apply to statements offered merely to show that they were made or had some effect on the hearer. *Miriani*, 422 F.3d at 153; *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007).

Pamela's statements to Wright must be separated before the Court can determine their admissibility. Pamela's first out-of-court statement to Wright was: "I was afraid [Barry] was

3

going to hurt you then . . . ." Pamela's other out-of-court statements to Wright were: "[Beard] told [Barry] . . . '[y]ou better watch out for [Wright]. She had a lot to say about you.'" These other statements actually consist of two layers of potential hearsay: (1) the alleged statements by Beard to Barry; and (2) Pamela's out-of-court statements to Wright recounting Beard's statements to Barry.

Pamela's first statement is offered to prove the truth of the matter asserted—i.e., Pamela was afraid that Barry was going to hurt Wright (presumably because of Beard's admonition). This statement would be inadmissible as an expression of Pamela's state of mind because Pamela was referring to a past mental condition, not her then-existing mental condition. *See* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.05 (Mark S. Brodin ed., Matthew Bender 2d ed. 1997) (collecting cases and stating that one requirement of the exception is, "[t]he declarant's state of mind must be relevant to an issue in the case."). Federal Rule of Evidence ("FRE") 803 does not cover "[a] statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3). This first statement, thus, is not admissible because no hearsay exception applies. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.50[2][e] (5th ed. 2013).

Beard's alleged statements to Barry that "[y]ou better watch out for [Plaintiff]. She had a lot to say about you" is not hearsay because it is not offered for its truth or falsity. Beard's statement to "watch out" for Wright is merely a suggestion or advice to Barry, which is not capable of being true or false. As the Sixth Circuit has recognized, "[a] suggestion or an order is not subject to verification at all because such utterances do not assert facts." *Gibson*, 675 F.2d at 833-34. Further, whether Wright actually "had a lot to say" about Barry is of no consequence. Wright offers the statement for the effect it had on Barry, not to prove that Wright actually had a

4

lot to say about him. Thus, these statements would be admissible as non-hearsay. *Gibson*, 675 F.2d at 833-34; Lawson, *supra*, § 8.05[1][b].

The crucial portion of the proffered evidence is Pamela's comment repeating to Wright what Beard said to Barry. The problem is that Wright did not hear Beard's supposed statement to Barry. The only proof on this point is Pamela's recount to Wright. Thus, Wright is offering Pamela's statement as evidence that Beard actually told Barry these things—i.e., for the truth of the matter asserted. Indeed, she has no other proof; Plaintiff never personally witnessed or overheard any conversation between Defendant and Barry.[1] Because Pamela's statements to Wright are hearsay, they are not admissible unless an exception exists under the FRE.

### A. FRE 803(2)—Excited Utterance

Plaintiff contends that Pamela's statements are admissible under FRE 803(2), which is the excited utterance exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The rationale behind this exception is that "a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any utterance [he or she] makes will be spontaneous and trustworthy." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983) (citation omitted). For a statement to qualify as an excited utterance, three elements must be met. *Id.* at 1057. "First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the

---

[1] Defendant is incorrect in asserting that Pamela's statements present "hearsay within hearsay" and must comply with FRE 805 to be admitted. As discussed above, the first layer—Beard's alleged comments to Barry—is not hearsay. Thus, the fact that Pamela repeated it does not create hearsay within hearsay.

5

person is under the stress of excitement caused by the event." *Id.* All of these elements concern one ultimate question, "[w]hether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Id.* at 1058 (internal quotation marks omitted) (citation omitted).

While the Sixth Circuit applies the three-element test above, it has recognized that "[t]here are no rigid guidelines for determining whether a statement is spontaneous." *Id*. at 1057. Depending on the case, any number of factors can bear on spontaneity—one of the most relevant being the length of time between the event and the statement. *Id.* at 1057-58.

> Probably the most important of the many factors entering into this determination is the time factor . . . . Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in reflective though process. Testimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice.

*Id.* at 1058 (citation omitted).

On the first element, McCormick's treatise refers to a startling event or condition as one "sufficiently startling to render inoperative the normal reflective thought processes of the observer." 2 George E. Dix et al., *McCormick on Evid.* § 272 (Kenneth S. Broun ed., 7th ed. 2013). Defendant maintains that Pamela simply overhearing his alleged statements to Barry does not qualify as a startling event or condition. Beard relies on *Estate of Tierney v. Shelberg*, No. 1:08-cv-866-HJW, 2011 U.S. Dist. LEXIS 111576 (S.D. Ohio Sept. 29, 2011), and *Bowers v. State Farm Ins. Co.*, No. 3:09-CV-290, 2011 U.S. Dist. LEXIS 39296 (W.D. Ky. Apr. 11, 2011), to support his position. The Sixth Circuit has recognized that the statement of a declarant alone may not be sufficient to establish the existence of a startling event for purposes of Rule 803(2). *See United States v. Arnold*, 486 F.3d 177, 185-86 (6th Cir. 2007); *see also Gainer v. Wal-Mart*

*Stores E., L.P.*, 933 F. Supp. 2d 920, 931 (E.D. Mich. 2013). While Plaintiff contends that the startling event was Beard telling Barry that Wright had been "telling on" him, there is no non-hearsay proof corroborating that Beard made these statements. The only evidence is Pamela's statements to Wright. While it may be arguable whether Beard's comment to Barry in Pamela's presence was itself a startling event, it is unnecessary for the Court to resolve this issue directly because Wright has failed to establish the second and third elements of the excited-utterance test.

As to the second element, Pamela approached Wright at her grandmother's home a day or more after the visit by law enforcement to the Moores' residence. Wright testified that Pamela "[a]lways waited until things cooled back down" before approaching her about incidents with Barry. (Wright Dep. 63:23-24). Thus, it appears Pamela revealed Beard's comments to Wright after the typical cooling-off period. Under these circumstances it cannot be said that Pamela made her statements before there was an opportunity to reflect upon what Beard allegedly said.

In analyzing the third element—whether the statement was made under the stress of the event—"[r]elevant factors . . . include (1) the lapse of time between the event and the declarations; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements." *Biegas v. Quickway Carriers Inc.*, 573 F.3d 365, 380 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Maggard v. Ford Motor Co.*, 320 F. App'x 367, 374 (6th Cir. 2009)). The Sixth Circuit has recognized that "[its] cases do not demand a precise showing of the lapse of time between the startling event and the out-of-court statement." *Arnold*, 486 F.3d at 185. Indeed, it has held that the excited-utterance exception sometimes permits the admission of statements made hours after

the startling event.[2]  Ultimately, courts should "[f]ocus on whether the declarant had the opportunity to fabricate or misrepresent in light of the circumstances of the event." *Maggard*, 320 F. App'x at 373 (citing Fed. R. Evid. 803(2) advisory committee's note).

The time factor, however, is still an important consideration, and the Court is hard pressed to find cases where other courts have found the excited-utterance exception applicable to statements made a day or more after the startling event.  Beard's alleged statements to Barry and the surrounding circumstances may have been unsettling, but not enough to remove the questions created by the lapse of time.  In *United States v. Winters*, 33 F.3d 720 (6th Cir. 1994), the Sixth Circuit affirmed a finding that a gunshot victim's statements two days after the shooting "[w]ere the product of conscious reflection and not made under the stress and excitement caused by the shooting." *Id.* at 723.  While there were other factors at play in *Winters*, such as the victim changing his story on multiple occasions, the time factor was nonetheless important to the conclusions of both courts.  *See id.*

Here, at least a day passed between Beard's alleged statements and Pamela's conversation with Wright.  Pamela was an adult.  The only evidence of Pamela's physical and mental state at the time she spoke with Wright is Wright's testimony that she was "really shaky" and scared, which indicates that Pamela may have been under the stress of excitement when she

---

[2] *See, e.g.*, *United States v. Baggett*, 251 F.3d 1087, 1090 n.1 (6th Cir. 2001) (finding statements made several hours after startling event were excited utterances); *United States v. McCullough*, 150 F. App'x 507, 510 (6th Cir. 2005) (applying exception to statement made approximately two-and-a-half hours after startling event); *United States v. Green*, 125 F. App'x 659, 662 (6th Cir. 2005) (finding statement made three hours after startling event to be admissible as excited utterance in spousal assault because "trauma and anxiety . . . do not suddenly dissipate when the assailant leaves the scene."); *United States v. Tabaja*, 91 F. App'x 405, 410 (6th Cir. 2004) (holding that a statement made up to eleven hours after the startling event was an excited utterance).  *But see United States v. McGhee*, 161 F. App'x 441, 445 (6th Cir. 2005) (concluding that a "nervous" statement made seven minutes after a police search and arrest not to be within the excited-utterance exception because the arrest would not create excitement for that period).

talked with Wright. *See United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (noting that in analyzing the third element, "[t]estimony that the declarant still appeared nervous or distraught and that there was a reasonable basis for continuing [to be] emotional[ly] upset will often suffice." (quoting *Haggins*, 715 F.2d at 1058)). Given the significant lapse between Beard's alleged statements and Pamela's conversations with Wright, it is unclear why Pamela was really shaky and scared. It could have been related to Beard's alleged statements to Barry, or it could have been something else. Ultimately, there is not enough evidence to conclude that Pamela was under the stress of excitement created by Beard's supposed statements to Barry versus Barry's conduct towards Pamela that necessitated the police intervention in the first place. Here, the lapse of time and attendant circumstances of Pamela's comments to Wright after Pamela had "cooled off" indicate a lack of spontaneity such that these statements do not qualify as an excited utterance. *See* 2 Dix et al., *supra*, § 272 n.30 (providing cases illustrative of whether declarant still under stress of excitement when statement made); Lawson, *supra*,§ 8.60[3][d].

Overall, Plaintiff has shown that, at most, one element of the excited utterance test is met. Therefore, FRE 803(2) does not apply.

B.     **FRE 807—Residual Exception**

Plaintiff maintains that Pamela's statements are nevertheless admissible under the residual exception to the hearsay rule. Hearsay evidence inadmissible under any other exception may still be admissible under FRE 807, the residual hearsay exception, if it possesses sufficient guarantees of trustworthiness. *United States v. Laster*, 258 F.3d 525, 530 (6th Cir. 2001). In relevant part, FRE 807 provides:

9

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

The legislative history of the residual exception indicates it was intended to have limited application. Senate Comm. on Judiciary, S. Rep. No 1277 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7065-66 ("It is intended that residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee did not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804 . . . ."). The Sixth Circuit has recognized, "[t]here is a lack of Sixth Circuit case law on the residual exception's trustworthiness requirement outside of the context of the Confrontation Clause . . . ." *Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 578 (6th Cir. 2013). Most courts apply a "[b]road inquiry," looking to the totality of the circumstances that surround the statement when determining whether it possesses the requisite guarantees of trustworthiness. Weinstein & Berger, *supra*, § 807.03. The Seventh Circuit, for example, has considered numerous factors, including: (1) "the probable motivation of the declarant in making the statement," (2) "the circumstances under which the statement was made," (3) "the knowledge and qualifications of the declarant," (4) the existence of corroborating evidence, (5) "the character of the declarant for truthfulness and honesty and the availability of evidence on the issue," (6) "whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury," and (7) "whether the witness ever

10

recanted his testimony." *United States v. Hall*, 165 F.3d 1095, 1110-11 (7th Cir. 1999) (internal quotation marks omitted) (citations omitted). The factors "[a]re neither exhaustive nor necessary prerequisites for admissibility of hearsay under [the residual exception], [but] they shed light on the sort of consideration a district court should take into account when evaluating the 'trustworthiness' of a hearsay statement." *Id.* at 1111.

      The present circumstances show that Pamela's fear for Wright's safety apparently motivated her to relate Beard's alleged statements to Wright. The record indicates that Pamela was frequently abused by Barry, who was without question a violent person. True, Pamela waited a day or more before relaying Beard's alleged statements to Wright, but Barry's volatile nature and the fact that Pamela typically allowed things to cool off indicates that she had good reason to wait. Pamela relayed Beard's alleged statements to Wright more than once—she told her again a few days after their initial conversation during an afternoon walk. (Wright Dep. 64:24-65:17). There is no evidence questioning Pamela's motivation, and Pamela had little reason to lie about whether she was afraid for Wright or what Beard had said. There is likewise no indication that Pamela bore any animus towards Beard, and she approached Wright, apparently a close friend, out of fear for Wright's safety. Thus, there exist under these circumstances some indicia of trustworthiness.

      Importantly, however, there is no evidence corroborating Beard's alleged statements. The only proof that Beard made inflammatory comments to Barry is Wright's version of what Pamela told her. Barry never mentioned Beard's alleged statements to Wright, and Wright has not indicated that Barry ever said anything to Pamela about the statements. Further, Wright has failed to show that these statements are more probative on the point than any other evidence that she could obtain through reasonable efforts. Beard is available to testify, and Wright has not

11

indicated whether she made any effort to contact the KSP officer who was present for the conversation between Beard and Barry. While Pamela had little reason to lie about being afraid for Wright's safety or what Beard said to Barry on May 22, Wright has failed to meet her burden of establishing all of the elements of FRE 807. Indeed, her argument on this issue consists merely of reproducing FRE 807 and concluding that Pamela's statements meet its requirements. Given the lack of any corroborating proof and the intended limited applicability of the residual exception, Pamela's statements to Wright are not admissible under FRE 807.

## IV. CONCLUSION

For the reasons above, Pamela's statements are inadmissible hearsay. Plaintiff's Motion in Limine (DN 42) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
December 7, 2016

cc: counsel of record